812 So.2d 1056 (2001)
Charlie TAYLOR, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01279-COA.
Court of Appeals of Mississippi.
March 20, 2001.
*1057 Thomas L. Kesler, Columbus, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
Before SOUTHWICK, P.J., THOMAS, and LEE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Charlie Taylor was convicted after a jury trial of two drug related offenses. On appeal he argues that the trial court should not have allowed him to represent himself, and that the court should have conducted a competency hearing. Finding no merit to these assignments of error, we affirm.

FACTS
¶ 2. On August 3, 1997, Charlie Taylor, a female friend, and Taylor's two children were traveling through Starkville when a motorist noticed his erratic driving and called law enforcement authorities. An Oktibbeha County sheriff's deputy responded, witnessed Taylor's crossing over the center line in the road, and stopped him for suspicion of driving under the influence. The officer learned that Taylor's license had been suspended in Florida. Taylor was arrested and his passenger, Penelope Grant, drove the car to the sheriff's department.
¶ 3. Grant owned the automobile and she gave permission for a search. Inside the car was a small plastic bag which appeared to contain cocaine and several plastic bags of what appeared to be marijuana. There was also a bag of what appeared to be cocaine found in the trunk of the car. Taylor, after being advised of his rights, gave a confession that was reduced to writing. Taylor admitted that he had left Key Largo, Florida the previous night en route to Mound Bayou. He admitted that the drugs were his and that he had intended to sell them once he reached Shelby.
¶ 4. Two months after Taylor's arrest Mark Williamson was appointed to represent him. A month later Taylor hired another attorney, Walter Turner, and Williamson was allowed to withdraw. The import of Taylor's having a procession of attorneys, which only starts with this change, is the central issue discussed on appeal.
¶ 5. On February 2, 1998, Taylor pled not guilty to all charges. Approximately one month later Tuner filed a motion to withdraw stating that Taylor had requested that he do so. A hearing on the motion was held. The court asked Taylor why he wanted to fire Turner. The reply was that they had not "seen eye to eye" on many issues, and that Turner would not do as he asked. The defendant also informed the court that he intended to retain a local law firm to represent him.
¶ 6. On April 27, 1998, Mr. Taylor appeared with his new attorney, William Bambach, and Turner was allowed to withdraw. That same day, the defense filed a motion for continuance. In paragraph seven of that motion Bambach alleged that the defendant was "delusional and could not rationally assist his attorney in his defense at this time." On April 28, 1998 the court granted the motion and continued *1058 the case to the following term of court. Regarding paragraph seven, however, the court stated that "Mr. Taylor appeared to be rational and testified logically from the witness stand and I do not find him delusional...."
¶ 7. Approximately three months later Bambach filed a motion to withdraw on the ground that Taylor had filed a bar complaint against him and had in essence fired him. The court ordered Bambach to remain available in case Taylor changed his mind and needed representation during the course of the trial.
¶ 8. A hearing was later held at which time Taylor informed the court that he wished to proceed pro se. At this time Bambach informed the court that Taylor would not discuss the case with him. When Taylor was asked by the court to respond to Bambach's statements, he replied that he had already dismissed Bambach as his counsel during the previous term of court, and that Taylor wished to represent himself. The exact statement was "I am my own attorney." When asked by the court if he no longer wanted Bambach and wished to represent himself, Taylor responded: "I wish to represent myself." The court then informed Taylor that he would be held to the same standards as a lawyer during the trial and that pro se representation could be problematic for him if he does not possess a certain degree of legal skill and ability. Taylor responded that he understood the court.
¶ 9. During the hearing Taylor became increasingly confrontational. After repeated warnings failed to curtail his behavior, the court ordered the sheriff to escort Taylor out of the courtroom and back to jail. The court then informed Bambach that he was to stay on to answer any questions Taylor might have during the course of trial, and to represent Taylor's interest in case he had to be removed from the courtroom during the trial for disruptive behavior.
¶ 10. The case was called for trial on the following day. The court once again asked Taylor if he had terminated Bambach, and he responded that he had. Taylor was then told that he had the right under the law to represent himself, but that he must understand that he will be held to the same rules and laws as if he were an attorney. Taylor responded by saying: "yes sir." Taylor was then informed that Bambach would be available to answer any questions and that if he, Taylor, had to be removed from the courtroom due to disruptive behavior that the case would continue with Bambach representing his interest. Taylor responded by saying "thank you," and that he understood.
¶ 11. The trial proceeded with Taylor representing himself and Bambach acting as standby counsel. On both opening and closing statements, Taylor admitted to the jury that the drugs were his. He was subsequently convicted of one count of possession of marijuana with the intent to distribute and one count of possession of cocaine with the intent to distribute. Taylor appeals.

DISCUSSION

I. Self-representation in a criminal trial
¶ 12. The clarity with which Taylor frequently expressed himself on wanting to represent himself has already been detailed. On the day of the trial the trial judge asked Taylor one last time if he wished to represent himself despite the problems associated with that. Taylor responded that he did. Attorney Bambach remained available throughout the trial.
¶ 13. The Sixth Amendment to the United States Constitution provides that every defendant has the right to conduct *1059 his or her own defense. Howard v. State, 697 So.2d 415, 420 (Miss.1997)(citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). A refusal to allow a defendant to represent himself is a violation of his constitutional rights and requires reversal. Gray v. State, 351 So.2d 1342, 1345 (Miss.1977). The procedure for evaluating a defendant's demand to represent himself is established by court rule:
When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
2. The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant...
URCCC 8.05.
¶ 14. Taylor contends that his waiver of counsel was not knowingly and voluntarily made because the trial judge did not comply with these requirements. Specifically he contends that he was not informed that he had the right to counsel or that proceeding pro se substantially increases the likelihood of an outcome unfavorable to the defendant. Those allegations are incorrect.
¶ 15. The first two requirements of the rule are that a defendant be informed of the right to counsel as well as the right to represent himself. Taylor was told that he had the right to counsel. He was initially appointed counsel by the court who was allowed to withdraw after Taylor hired another attorney. This attorney was also allowed to withdraw when Taylor hired yet another attorney to represent him. At the hearing on the motion to withdraw, Taylor expressed his concern that the court was attempting to impose a court appointed attorney on him and not let him select the attorney of his choice. The court responded by stating: "I want you to have any lawyer you want." The court went on to say: "I'm telling you, you can hire anybody you want to and I don't care what lawyer it is ... you can have as many lawyers as you can pack in this courtroom."
¶ 16. The remaining requirements of the rule are that the defendant be informed that he will be held to the same standard as an attorney and that proceeding pro se increases the likelihood of an unfavorable result. Both of these requirements were explicitly met by the trial court. The court stated: "I want you to know that you will be held to the same standards as a lawyer ... that is, you are treated as if you have the knowledge and skill as an attorney ... That means that you must comport yourself as an attorney does...." The court went on to say that *1060 "it could result in problems if you do not have the legal skill and ability." Taylor responded "right. I understand that." At the trial the judge again asked Taylor if he understood that he would be held to the same rules and standards as an attorney, and he responded affirmatively.
¶ 17. Taylor made an intelligent and informed waiver of counsel. "An accused could place the trial judge in a difficult situation by insisting on a pro se trial, and, upon conviction, claim that he/she did not have the benefit of counsel and did not knowingly waive counsel." Matthews v. State, 394 So.2d 304, 311 (Miss.1981). In fact, the trial court assured that Taylor's rights were protected during trial by instructing attorney Bambach to remain as standby counsel to assist. This arrangement has been called "hybrid representation," an appropriate response by the court to the demands of someone such as Taylor. Metcalf v. State, 629 So.2d 558, 562 (Miss. 1993).
¶ 18. There is nothing more that the trial court could have donethe court had no right to insist on Taylor's having counsel after he had refused it. The only remaining issue is whether there was a basis to question Taylor's competence to make this choice.

II. Competency hearing
¶ 19. Taylor alleges that the trial judge should have on his own motion ordered a hearing to determine Taylor's competence to stand trial. He asserts that his "bizarre" behavior that included failing to cooperate with attorneys, admitting guilt to the jury, and calling a witness who incriminated him, revealed that his was mentally incompetent. One of his lawyers also had filed a motion alleging that Taylor was delusional.
¶ 20. Since the defense never requested a competency hearing, we must examine the standards that establish when a trial court itself must order a hearing:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court ... After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial....
URCCC 9.06. If reasonable grounds exist for the trial judge to believe that the defendant is not competent, then a hearing into the issue is required. Howard v. State, 697 So.2d 415, 422 (Miss.1997) (citing Conner v. State, 632 So.2d 1239, 1248 (Miss.1993)(overruled on other grounds by Weatherspoon v. State, 732 So.2d 158 (Miss.1999)). The decision on whether there exists reasonable grounds "rests largely within the discretion of the trial judge because the judge sees the evidence first hand and observes the demeanor and behavior of the defendant." Conner, 632 So.2d at 1248. "The standard for competence to stand trial is whether the defendant has `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has a rational as well as factual understanding of the proceedings against him." Dunn v. State, 693 So.2d 1333, 1340 (Miss.1997) quoting Godinez v. Moran, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)).
¶ 21. We note that the trial judge responded to the attorney's motion regarding Taylor's alleged delusional state by saying that "the court disagrees. Mr. Taylor appeared to be rational and testified logically from the witness stand and I do not find that he is delusional...."
¶ 22. There is evidence of a defendant who was obstinate, angry, capricious in his actions, and certainly not very wise *1061 in some of his decisions. He also at times was belligerent in court. Such individuals, unless more serious mental incapacities are shown, do not forfeit their right to decide whether to represent themselves. Further, it is for the trial judge in the first instance to determine whether such conduct justifies a competency hearing. The trial judge was in the best position to make a determination whether there existed a reasonable ground for the court to order a competency hearing on its own initiative. After observing Taylor's actions and demeanor both before and during the trial, the court did not find it necessary to order a competency hearing. Nothing in this record indicates that the decision was an abuse of the court's discretion.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION ON COUNT I OF POSSESSION OF MORE THAN ONE OUNCE OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF FORTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $40,000, AND COUNT II OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE AND SENTENCE OF SIXTY YEARS AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO BE SERVED CONCURRENTLY WITH COUNT I, AND FINE OF $2,000,000, IS AFFIRMED. ALL COSTS ARE ASSESSED TO OKTIBBEHA COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.