835 So.2d 958 (2003)
Morris BROOKS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-02135-COA.
Court of Appeals of Mississippi.
January 28, 2003.
*959 Carrie A. Jourdan, Columbus, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
Before McMILLIN, C.J., IRVING and MYERS, JJ.
McMILLIN, C.J., for the Court.
¶ 1. Morris Brooks has appealed his conviction of kidnaping returned by a jury in the Circuit Court of Oktibbeha County. He raises three issues on appeal as follows: (a) that the trial court erred in permitting Brooks to represent himself at trial; (b) that Brooks received ineffective assistance of counsel during the preliminary proceedings leading up to trial and while appointed counsel was serving in an advisory capacity during the trial; and (c) that the trial court erred in not setting aside the guilty verdict after it was discovered that a juror was personally acquainted with Brooks but failed to disclose that fact during voir dire.
¶ 2. We find none of these issues to have merit. For that reason, we affirm the judgment of the trial court.

I.

Facts
¶ 3. In view of the issues presented in this appeal, a detailed recitation of the facts of the underlying crime does not appear necessary. The State offered proof that Brooks had approached Thomas Davison at a convenience store in Starkville and forced Davison against his will at knife-point into a vehicle driven by Brooks' fiancee, Rosana Landwer. Brooks subsequently caused Landwer to drive away from the store. Davison's continued presence in the car as it drove away was claimed by the State to be caused by violence to his person or threats of such violence carried out by Brooks.
¶ 4. Police officers responding to a call stopped the vehicle shortly after the car left the convenience store. Davison, Landwer and Brooks were all still occupying the car. Law enforcement officers subsequently searched the vehicle and recovered a knife from the passenger compartment.

II.

First Issue: Brooks' Decision to Represent Himself
¶ 5. On the day trial was scheduled to begin, Brooks formally moved that his defense attorney be dismissed and that Brooks be allowed to represent himself. There followed on the record a lengthy exchange between the trial court and Brooks regarding the advisability and the potential consequences of such a decision. Repeatedly, the trial court cautioned Brooks that the court considered this an unwise move on his (Brooks') part. Each time, Brooks acknowledged the trial court's advice but assured the court that he felt able to effectively represent himself and was prepared to assume that responsibility with full knowledge of the pitfalls associated with doing so as outlined by the court.
¶ 6. During the course of this exchange, Brooks represented to the court that he had obtained a bachelor's degree from Illinois State University and had taken a series of correspondence courses relating to the law while formerly imprisoned on another conviction "through a Harvard Law correspondence course...."
¶ 7. Ultimately, the trial court permitted Brooks to represent himself but required court-appointed counsel to continue to attend the remainder of the trial to act in an *960 advisory capacity to Brooks should Brooks request such assistance.
¶ 8. In this appeal, Brooks is once again represented by an attorney, though not the same one who served him during the trial. Brooks, through his new counsel, now asserts that the trial court committed reversible error in acceding to Brooks' persistent demand to represent himself. Brooks suggests that it should have been apparent to the trial court that he was not mentally competent to make an informed decision of that nature. In fact, Brooks now says that he may have lacked the requisite mental competency to be subjected to a trial, much less to act as his own attorney.
¶ 9. The foundation for this assertion is that "[a] couple of simple inquiries" would have revealed that Brooks was not, in fact, a college graduate nor did Harvard Law School have a program to offer law-related courses to prison inmates. Brooks suggests that these false representations demonstrated that he was at least arguably "delusional," and should have prompted the trial court to undertake a sua sponte inquiry into the matter of his competency to stand trial, citing Conner v. State, 632 So.2d 1239, 1248 (Miss.1993) (overruled by Weatherspoon v. State, 732 So.2d 158 (Miss.1999)).
¶ 10. A defendant desiring to represent himself at trial has a constitutional right to do so. Faretta v. California, 422 U.S. 806, 819, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Nevertheless, in view of the evident difficulties associated with such a decision, the Mississippi Supreme Court has fashioned a procedure to both fully acquaint the defendant with the relevant considerations that ought to influence his decision and to satisfy the court that the defendant has "knowingly and voluntarily" elected to represent himself. URCCC 8.05. Once the court is satisfied that such a decision has been made, the authority of the court to deny the defendant's wish no longer exists. Taylor v. State, 812 So.2d 1056 (¶¶ 17-18) (Miss.Ct.App.2001).
¶ 11. The same issue raised by Brooks in this case was before our Court in the Taylor case, since Taylor asserted that his behavior at trial was proof in itself of his mental incompetency to make an informed decision to represent himself. Id. at (¶ 19). Reviewing the exchange between the trial court and Brooks in light of the considerations raised in Taylor, this Court concludes that there was not enough indication of mental incompetency on the part of Brooks to warrant a sua sponte inquiry into that question. His answers to the court's inquiries were intelligent and appropriate. He appears from the record to have been alert and focused on the issues being discussed, and certainly he seemed to have been insistent in asserting his desire to represent himself. The claims regarding his educational background could as easily be construed as a calculated effort to persuade the trial court to grant his request through a conscious inflation of his "resume" as the delusional ranting of a mentally incompetent person.
¶ 12. The trial court, observing the demeanor of the defendant first-hand, is best suited to make those sort of subjective judgment calls. Conner v. State, 632 So.2d at 1248. There is the additional problem that this Court, in its deliberations, is confined to consideration of matters appearing in the record. Colenburg v. State, 735 So.2d 1099(¶ 6) (Miss.Ct.App.1999) (citing Saucier v. State, 328 So.2d 355, 357 (Miss. 1976)). There is nothing in the record to demonstrate the falsity of Brooks' claims regarding his attainments in college or his alleged efforts to educate himself in the field of law-related matters through correspondence courses. We are, in that circumstance, reluctant to make a factual determination *961 as to exactly what a fuller inquiry into Brooks' claims would have revealed.
¶ 13. While Brooks' claims in this regard might have been troubling had it appeared that the trial court put substantial weight on them in reaching a decision, our review of the record leaves us satisfied that the trial court did not do so in determining that Brooks had made an informed decision on the question. Instead, the record seems to show that the court's decision was based on a more general determination that Brooks had the intelligence to understand and assess the problems associated with self-representation and, thus, had made an informed decision to undertake the task. Under the limited standard of review available to this Court in such matters, we do not find enough contrary information in the record to convince us that the trial court abused its discretion in so finding.

III.

Second Issue: Ineffective Assistance of Counsel Claim
¶ 14. Having elected to represent himself, Brooks cannot now claim that his court-appointed attorney, retained in the proceeding by order of the circuit court solely to act in an advisory capacity to Brooks, was so deficient in that capacity that Brooks was denied his constitutional right to effective representation. Gardner v. State, 792 So.2d 1000 (¶ 21) (Miss.Ct. App.2001).

IV.

Third Issue: New Trial Motion
¶ 15. Brooks filed a motion for new trial alleging juror misconduct based on a claim that Jerry Austin, one of the jurors at the trial, had failed to reveal during voir dire that he was personally acquainted with the defendant Brooks. In the course of an inquiry based on Brooks' assertion, Austin admitted to being personally acquainted with Brooks and indicated that they had become familiar with each other approximately five years earlier when they both visited at the residence of Ezell Jefferson. He did not explain why he failed to reveal this information during the course of voir dire, even though there was a direct inquiry made as to whether any potential juror was personally acquainted with Brooks.
¶ 16. Brooks, for his part, testified at the new trial hearing that he had never known Austin's last name and, thus, did not realize this was the same individual he had previously known when the name appeared on the prospective jurors list. He also testified that Austin had gained a fairly substantial amount of weight in the intervening years since he had last seen him and that, as a result, he did not recognize him in the courtroom during the course of the trial. According to Brooks, he was only able to make the connection as he mentally rehashed the trial in his cell after the jury's guilty verdict.
¶ 17. The trial court, in denying Brooks' motion, made findings of fact that, in effect, concluded that Brooks was being untruthful in denying that he did not recognize Austin as a former acquaintance, taking note of the uncontradicted testimony that Austin and Brooks had been acquaintances for a number of years and that Brooks was often within six feet of Austin during the proceedings. The court took the view that Brooks had, in fact, counted on Austin as being friendly to the defense and purposely elected to leave him on the jury rather than making a timely claim that Austin had not been satisfactorily forthcoming during voir dire.
*962 ¶ 18. The court reasoned that it would be improper to permit Brooks to pursue a course of silence in hope that Austin would vote to acquit and yet be able to obtain a mistrial if that hope did not pan out. The court took judicial notice of the prosecution's well-established practice in the county of striking jurors having an acquaintance with the defendant and concluded that, had Brooks raised the issue of Austin's failure to properly respond at the proper time, there was essentially no doubt that he would have been struck from the jury panel.
¶ 19. In matters relating to new trial motions, the trial court's decisions are reviewed on an abuse of discretion standard. Goff v. State, 778 So.2d 779 (¶ 18) (Miss.Ct.App.2000). Further, as to issues of credibility of testimony offered in support of the motion, the trial court sits as finder of fact and the court's findings on appeal are entitled to deference since the court observes the witnesses first-hand and is better positioned to assess matters of credibility. Murphy v. Murphy, 631 So.2d 812, 815 (Miss.1994).
¶ 20. We do not find that the trial court abused its discretion in disbelieving Brooks' facially incredible version of why he was untimely in raising the issue of his prior relationship with juror Austin or in declining to grant a mistrial based solely on the fact that Austin was permitted to serve as a juror when Brooks himself failed to raise the issue before jury selection was concluded.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY OF CONVICTION OF KIDNAPING AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF SUSPENSION, REDUCTION, PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.