IRVING, J,
 

 for the Court.
 

 ¶ 1. Grover Hairston was convicted in the Circuit Court of Lauderdale County of aggravated assault and possession of a firearm by a convicted felon and sentenced as a habitual offender to serve twenty-three years in the custody of the Mississippi Department of Corrections. Aggrieved, Hairston appeals and asserts that the trial court erred in allowing him to proceed pro se. Hairston reaches this conclusion by asserting that the trial court should have (1) sua sponte ordered a competency hearing, and (2) made a finding on the record that his waiver of counsel was intelligently and competently made pursuant to Rule 8.05 of the Uniform Rules of Circuit and County Coui’t.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. On November 10, 2006, Hairston was charged with aggravated assault and possession of a firearm by a convicted felon. He was represented by court-appointed counsel at several pretrial motion hearings. However, in the last pretrial motion hearing, which occurred on the day of trial, Hairston announced to the court that he desired to represent himself. The trial court informed him of the risks that he faced and of the standards that he would be held to if he proceeded pro se. Nevertheless, Hairston insisted on representing himself. The trial court instructed his court-appointed counsel to sit with him during trial in an advisory capacity in order to ensure that his rights were protected. Hairston proceeded through the trial by conducting voir dire, making an opening statement, cross-examining witnesses, moving for a directed verdict at the appropriate time, and by making a closing argument — all done mostly without the help of his court-appointed counsel.
 

 ¶4. The jury found Hairston guilty on both counts, and he was subsequently sentenced as a habitual offender to serve twenty-three years in the custody of the Mississippi Department of Corrections.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 5. The Sixth Amendment to the United States Constitution grants every criminal defendant a right to the assistance of counsel. U.S. Const, amend. VI. However, implicit in this right is the right to waive counsel, thus insuring the right of a defendant to conduct his or her own defense.
 
 Evans v. State,
 
 725 So.2d 613, 702 (¶ 418) (Miss.1997) (citing
 
 Faretta v. California,
 
 422 U.S. 806, 814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). It is well settled in Mississippi jurisprudence that
 
 *405
 
 “[i]n order for a defendant to knowingly and intelligently waive the right to counsel, the defendant must meet a test for competency to stand trial.”
 
 Edwards v. State,
 
 800 So.2d 454, 466(¶33) (Miss.2001) (citing
 
 Brooks v. State,
 
 763 So.2d 859, 865(¶ 17) (Miss.2000)). Our supreme court has held that “[t]he standard for competence to stand trial is whether a defendant has ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding’ and ‘has a rational as well as factual understanding of the proceedings against him.’ ”
 
 Martin v. State,
 
 871 So.2d 693, 697-98(¶ 17) (Miss. 2004) (quoting
 
 Dusky v. United States,
 
 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (I960)). Further, a competent defendant is one:
 

 (1) who is able to perceive and understand the nature of the proceedings;
 

 (2) who is able to rationally communicate with his attorney about the case;
 

 (3) who is able to recall relevant facts;
 

 (4) who is able to testify in his own defense if appropriate; and
 

 (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.
 

 Id.
 
 at 697(¶ 17) (quoting
 
 Howard v. State,
 
 701 So.2d 274, 280(¶ 18) (Miss.1997) (abrogated on other grounds)).
 

 ¶ 6. Further, Rule 9.06 of the Uniform Rules of Circuit and County Court states in part:
 

 If before or during the trial the court, of its own motion or upon motion of an attorney, has
 
 reasonable ground, to believe that the defendant is incompetent to stand, trial, the court shall order the defendant to submit to a mental examination
 
 by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
 
 After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial.
 
 After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.
 

 (Emphasis added).
 

 ¶ 7. Hairston argues that the trial court erred in allowing him to conduct his own defense because he did not meet all of the five requirements of the competency test enumerated in
 
 Martin.
 
 Specifically, Hairston asserts that he did not understand the full nature of the proceedings. Hairston points to several instances that occurred before and during the trial which, he argues, should have illustrated to the trial court that he did not understand the full nature of the proceedings against him. Accordingly, Hairston insists that pursuant to Rule 9.06, the trial court should have sua sponte ordered a competency hearing to determine if he was capable of providing a knowing and intelligent waiver of his constitutional right to an attorney. The specific instances that Hairston alleges should have triggered the trial court to, sua sponte, hold a competency hearing, include: (1) his not understanding the enhanced sentencing requirements during his bond hearing, (2) his not understanding the burden of proof when he made certain statements during voir dire, (3) his arguing self-defense but subsequently withdrawing the self-defense jury instruction, and (4) his statements about his having had brain surgery and an aneurysm. We analyze each of these instances separately.
 

 ¶ 8. First, the trial court explained to Hairston during the bond hearing that the court’s interpretation of the enhanced sentencing statute differed from Hairston’s but advised him that he and his court-appointed attorney should consult on the
 
 *406
 
 interpretation. The court further explained that it would proceed with its interpretation but that ultimately the supreme court would have the final word on the interpretation. The trial court transcript reflects the following dialogue:
 

 BY THE DEFENDANT: Yes, sir. Thank you. Well, Your Honor, all I want to say, Your Honor, is that on the indictment they indicted me as a habitual offender. And the statute says that habitual criminals have to serve two terms in the state — in the penal institution, two terms, not two consecutive sentences.
 

 [[Image here]]
 

 BY THE COURT: Yeah. I mean the situation is it doesn’t require you to serve separate terms to be a habitual offender under Section 99-19-81. The statute if you will read it says that if you were sentenced on separate felonies where you could have served a year or more in prison.
 

 BY THE DEFENDANT: Yes, sir.
 

 BY THE COURT: And on each of those if you were sentenced to the felony of commercial burglary twice and to the forgery and uttering once, and you have been sentenced to three separate felonies on which you could have served time of a year or more. The fact that you agreed to some kind of concurrent sentence or whatever that — in the opinion
 
 of
 
 this Judge doesn’t matter.
 

 BY THE DEFENDANT: Yes, sir. Okay.
 

 BY THE COURT: So I don’t want you — you know, you’ve got an attorney that can advise you. And I could be making the wrong interpretation there; nevertheless that is my understanding of what the law is. And you need to make your decision based on what you and your attorney feel like is the law, and then ultimately the Supreme Court could say I’m wrong and you are right.
 

 BY THE DEFENDANT: Yes, sir.
 

 ¶ 9. In the quoted exchange, it appears that Hairston understood the judge’s interpretation of the enhanced sentencing statute. Further, the judge accurately informed him that our supreme court has the final say on the interpretation of the law. Based on this exchange, it is clear to us that whatever may have been Hair-ston’s initial understanding of the application of the enhanced sentencing statute, he was able to understand what was communicated to him by the court regarding how it applied to him. Therefore, we find no merit to this contention.
 

 ¶ 10. Second, Hairston argues that the following statement that he made during voir dire about the burden of proof should have alerted the judge that Hairston did not understand the nature of the proceedings:
 

 Well, I’m Grover Hairston. I have the task to prove myself innocent beyond a reasonable shadow of doubt.
 

 However, Hairston accurately and astutely stated the requirements of the State’s burden of proof to the jury during his opening statement:
 

 And the State must prove beyond a reasonable doubt of all the elements of the charge; not one, not two, not three, but all. What must the State prove? All three elements of on [sic] or about August 7 in Lauderdale County, Mississippi, I, myself purposely and/or knowingly caused serious bodily injury to Alonzo Tyuse -with a deadly weapon by shooting him.
 

 ¶ 11. Not only did Hairston precisely identify the State’s burden of proof during his opening statement, he also included the
 
 *407
 
 specific elements of the crime. In light of this fact, we do not agree with Hairston’s contention that the statement which he made during voir dire illustrated that he did not understand the nature of the proceedings.
 

 ¶ 12. Third, Hairston argues that his withdrawing the self-defense instruction should have further indicated to the judge that he did not understand the nature of the proceedings. This argument also has no merit, as there was no evidentiary basis for a self-defense instruction.
 

 ¶ 13. Lastly, Hairston points out that, during voir dire, he informed the court and the jury that he had had an aneurysm and had undergone brain surgery. He asserts that the judge should have ordered a competency hearing after becoming aware of this information. The fact that a person has had an aneurysm and has undergone brain surgery does not prove or establish that the person is mentally incompetent. Moreover, Hairston never explained how the brain surgery or aneurysm affected his competency.
 

 ¶ 14. A competency hearing under Rule 9.06 is not automatic. As mentioned above, the court must first have reasonable grounds to believe that the defendant is incompetent to stand trial. If it does, then the court must order a mental examination. Only after the mental examination occurs shall the defendant receive a competency hearing. Although Hairston does not possess the skill and knowledge of an attorney, the record reflects that he, with the assistance of his court-appointed attorney, performed reasonably well. We have found nothing in the record that should have caused the trial court to believe that Hairston was incompetent to stand trial. Therefore, the trial court did not err in failing to order, sua sponte, a competency hearing.
 

 ¶ 15. Next, Hairston asserts that the trial court erred in failing to make a finding on the record that he intelligently and competently waived his right to counsel pursuant to Rule 8.05 of the Uniform Rules of Circuit and County Court. Rule 8.05 outlines the procedure a trial court must follow when it becomes aware that a defendant desires to act as his/her own attorney:
 

 When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
 

 1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
 

 2. The defendant has the right conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
 

 3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend him/herself will be hampered.
 

 4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
 

 5. Other matters as the court deems appropriate.
 

 
 *408
 
 After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised this right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.
 

 ¶ 16. Hairston argues that since the items set forth in Rule 8.05 were not enumerated in the record, his conviction should be reversed and remanded. We disagree. In fact, we find that the trial court adequately informed Hairston of those items.
 

 ¶ 17. As to item number one, the court did not literally say to Hairston that he had a right to an attorney. As previously noted, the court ordered a court-appointed attorney to sit throughout the trial with Hairston and advise him as necessary. There could be no clearer statement by the court to Hairston regarding Hairston’s right to an attorney. With regard to item number two, the court adequately informed Hairston of his right to conduct his own defense, including the right to utilize the court-appointed attorney in whatever capacity he desired. The following is a pertinent excerpt from the trial transcript regarding this item:
 

 BY THE COURT: All right. And you understand now that you’ve got rights [sic] to represent yourself, and I’ll honor that.
 

 BY THE DEFENDANT: Yes, sir.
 

 [[Image here]]
 

 BY THE COURT: I’m going to allow Marcus
 
 [1]
 
 to sit in with you. If you want to consult with Marcus, fine.
 

 ¶ 18. As it relates to item number three, the court informed Hairston that he would be held to the same standard as an attorney. The following excerpt from the transcript illustrates this point:
 

 BY THE COURT: Nevertheless, the [cjourt has rules that I’ve got to enforce. I mean, there are rules of procedure that anyone who is an advocate in the courtoom has got to abide by. Those same rules apply whether you have an attorney or whether you are an individual. In other words, as an individual, you have got to follow the same rules that an attorney would be expected to follow if he were representing [you in] that case. Are you clear about that?
 

 BY THE DEFENDANT: Yes, sir.
 

 ¶ 19. As to item number four, the court adequately informed Hairston that proceeding pro se increased the likelihood of an unfavorable outcome. The following excerpt from the trial transcript illustrates this point:
 

 BY THE COURT: And you have consulted with Marcus and you understand that you have a right to represent yourself, but as I told you off the record earlier when you were making that decision, that in the opinion of this [c]ourt, that is the wrong thing for you to do. I told you that, right?
 

 BY THE DEFENDANT: Yes, sir.
 

 [[Image here]]
 

 
 *409
 
 BY THE COURT: And you understand that there are legal things that an experienced lawyer knows when to ask for what relief and that it would be an unusual case, in my opinion, where you would know what to do and how to properly defend yourself. I know you are an exceptionally smart individual, but it is, you know, a situation where being smart is not as valuable as being experienced many times. It may be that it is in this case the right thing for you to do; it would be an unusual case. You are aware of that?
 

 BY THE DEFENDANT: Yes, sir.
 

 ¶ 20. After the court informed Hairston of each of the items set forth in Rule 8.05, the court concluded, without making a specific finding on the record, that Hairston had knowingly and voluntarily exercised his right to proceed pro se. While the court should have made the specific finding on the record, it is clear to us that the court did in fact make the finding, although not on the record. We reach this conclusion because, after the court informed Hairston of all the things that the court was required to inform him of, the record reflects the following exchange:
 

 BY THE COURT: Okay. And also for the record, Marcus, have you counseled with Mr. Hairston about his decision to represent himself in the courtroom?
 

 BY MR. EVANS: I have, Your Honor, and I adamantly required that he allow me to represent him at trial today, but he has decided to take it into his own hands and wants to proceed pro se.
 

 BY THE COURT: Okay. And [Mr. Hairston], I will respect that decision, that is a decision that you are entitled to make.
 

 BY THE DEFENDANT: Thank you.
 

 BY THE COURT: Nevertheless, I’m going to instruct Marcus to be there in the courtroom with you.
 

 ¶ 21. We find that the substantive requirements of Rule 8.05 were met. Therefore, this assertion of error is also without merit.
 

 ¶ 22. In summary, we find that the trial court did not err in failing to sua sponte order a competency hearing for Hairston. We also find that the record contains adequate findings for this Court, as a reviewing court, to conclude that Hairston knowingly and intelligently waived his right to have counsel conduct the proceedings on his behalf.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUD-ERDALE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Here, the court is referring to Marcus Evans, Hairston's court-appointed attorney.