ROBERTS, J., for the Court:
 

 ¶ 1. In Count I, David Bernard Thompson was convicted of possession of more than 500 grams but less than one kilogram of marijuana with the intent to distribute within 1,500 feet of a church. In Count II, he was convicted of possession of more than ten grams but less than thirty grams of cocaine with intent to distribute within 1,500 feet of a church. For Count I, the Pike County Circuit Court sentenced Thompson to twenty years in the custody of the Mississippi Department of Corrections (MDOC) with five years suspended and fifteen years to serve followed by five years of post-release supervision. In Count II, the circuit court sentenced Thompson to fifteen years in the custody of the MDOC with five years suspended and ten years to serve followed by five years of post-release supervision. Additionally, the circuit court set the sentence in Count II to run consecutively to the sentence in Count I. Thompson appeals and claims: (1) he did not make a valid, intelligent, and knowing waiver of his right to counsel; (2) the circuit court allowed the prosecution to elicit inadmissible hearsay; (3) the circuit court infringed upon his rights to call and confront a necessary witness; and (4) the verdict is contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Thompson’s convictions originated from a “controlled buy” of narcotics that was arranged by Officer Deska Varnado of the McComb Police Department. Prior to the buy, Officer Varnado and Agent Dan Hawn met with a confidential informant. Agent Hawn searched the confidential informant’s vehicle, and Officer Varnado searched the confidential informant. Officer Varnado then gave the confidential informant $250 to purchase narcotics. The confidential informant told Officer Varnado and Agent Hawn that he could buy drugs from someone he identified as “Head.” The confidential informant then went and purchased drugs at 1119 Nelson Avenue. The events that occurred during the buy were captured on audio and video recording equipment.
 

 ¶ 3. Officer Varnado obtained a warrant to search the house in which the buy occurred. That house turned out to be Thompson’s residence. Authorities seized the following evidence as a result of that search: (1) approximately 105 grams of marijuana in the stove; (2) approximately 408 grams of marijuana, small sandwich bags, and a “finger scale” in the closet of
 
 *544
 
 the master bedroom; (3) approximately 456 grams of marijuana in Thompson’s clothing; (4) approximately twenty grams of crack cocaine in the freezer or refrigerator; and (5) $2,000 under the mattress of the bed in the master bedroom.
 

 ¶ 4. Although Thompson initially obtained private counsel, during pre-trial hearings Thompson informed the circuit court that he no longer wished to be represented by his counsel. According to Thompson, he believed that his counsel was actually “helping the State.” The circuit court permitted his private counsel to withdraw and instructed Thompson to obtain a new attorney.
 

 ¶ 5. Under the impression that no one would be willing to represent him with only a couple of weeks to prepare, Thompson informed the circuit court that he wanted to represent himself. The circuit court managed to convince Thompson to allow a court-appointed attorney to participate in an advisory role at trial. Out of an “abundance of caution,” both the court-appointed attorney and the circuit court repeatedly warned Thompson of the danger that accompanied representing himself. Despite those warnings Thompson insisted on only letting the court-appointed attorney participate in an advisory role.
 

 ¶ 6. At Thompson’s trial, the prosecution called Officer Varnado. Officer Varnado testified regarding the events that led to his obtaining a warrant to search Thompson’s home. Officer Varnado also testified regarding the evidence that was seized as a result of the search warrant. The prosecution also called Paige Mills of the Mississippi Crime Laboratory, who verified that the substances found at the house were, in fact, marijuana and cocaine.
 

 ¶ 7. Thompson was convicted of both counts. Following an unsuccessful post-trial motion for a new trial, Thompson appeals.
 

 ANALYSIS
 

 I. WAIVER OF THE RIGHT TO COUNSEL
 

 ¶ 8. Thompson elected to represent himself. After discussing his decision with the circuit court, Thompson agreed to allow an attorney to act in an advisory role. In his first issue, Thompson claims he did not properly waive his right to counsel. Pursuant the Sixth Amendment to the United States Constitution, every criminal defendant has a right to assistance of'eounsel. U.S. Const. amend. VI. However, “implicit in this right is the right to waive counsel, thus insuring the right of a defendant to conduct his or her own defense.”
 
 Hairston v. State,
 
 4 So.3d 403, 404 (¶ 5) (Miss.Ct.App.2009). In fact, if a circuit court refuses to allow a defendant to represent himself, a subsequent conviction may require reversal.
 
 Taylor v. State,
 
 812 So.2d 1056, 1059 (¶ 13) (Miss.Ct. App.2001). Be that as it may, a defendant does not have a constitutional right to insist on proceeding pro se and then change his mind when he is convicted. Stated differently, a defendant may not waive assistance of counsel, represent himself at trial, and then claim he was denied assistance of counsel on a motion for a new trial or appeal. Even so, a circuit court must adequately inform a defendant of certain matters before allowing that defendant to represent himself. Thompson claims the circuit court did not adequately inform him. We disagree.
 

 ¶ 9. When a criminal defendant insists on representing himself, a circuit court must inform that defendant of his rights in accordance with the requirements of Rule 8.05 of the Uniform Rules of Circuit and County Court. Rule 8.05 provides:
 

 When the court learns that a defendant desires to act as his/her own attorney,
 
 *545
 
 the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
 

 1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the [S]tate will appoint one free of charge to the defendant to defend or assist the defendant in his/ her defense.
 

 2. The defendant has a right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
 

 3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant "will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
 

 4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
 

 5. Other matters as the court deems appropriate.
 

 URCCC 8.05. Once the defendant has been instructed pursuant to Rule 8.05, and the circuit court has determined that the defendant understands these matters, the circuit court must then ascertain if the defendant still wishes to proceed pro se or if the defendant desires to have an attorney to assist with his or her defense.
 
 Id.
 
 If the defendant maintains his desire to proceed pro se, the circuit court should determine whether the defendant has “exercised this right knowingly and voluntarily and, if so, make the finding a matter of record.”
 
 Id.
 
 The circuit court “may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.”
 
 Id.
 

 ¶ 10. Here, the circuit court not only met the requirements of Rule 8.05, but it far surpassed them. Immediately upon hearing of Thompson’s desire to represent himself, the circuit court informed Thompson that he had the right to assistance of a court-appointed attorney. The circuit court also informed Thompson that he should exercise his right to the assistance of a court-appointed attorney. However, Thompson refused to be represented by a court-appointed attorney based on his belief that a court-appointed attorney would be “helping the State.” Thompson stated he could not think of anyone in Pike County who had won a case, and he clung to the belief that court-appointed attorneys would not help criminal defendants.
 

 ¶ 11. After further discussion and encouragement by the circuit court, Thompson finally agreed to allow an attorney, Nelson Estess, assist him in an advisory role. Prior to Thompson’s trial, Estess clarified for the record and for Thompson exactly what he understood his role to be. To be precise, Estess told Thompson:
 

 There are many pitfalls that are going to come during the course of trial. There are going to be decisions that have to be made on a split-second basis. And by the time I lean over to you to talk to you about it and try to educate you on the reasons either why to do so or why not to do so, then you haven’t had the opportunity; time has passed and your objection may [not] be contemporaneous, which is a requirement for a lot of objections during the course of trial.... But suffice it to say that while I understand you’re an intelligent man and you understand what you’re talking about, we
 
 *546
 
 can’t make up for you not having a law degree in the span of a couple of weeks. In all reality, it can’t be fixed without you going to law school. That’s the reason most defendants have lawyers to represent them. There are issues concerning issues of fact which should be argued before the jury and there are issues of procedure which are argued before the judge. While I understand you know the facts of your case and you’re passionate about your case, you, just like every other pro se defendant, is [sic] hampered in not having the benefits of an education that is provided you know those differences....
 

 The circuit court also informed Thompson that proceeding pro se was not in his best interest. Specifically, the circuit court told Thompson: “Well, it is your constitutional right to represent yourself, Mr. Thompson. You can’t represent anyone else, but you can represent yourself. However, it’s also probably not a very wise decision on your part to represent yourself.”
 

 ¶ 12. The circuit court further warned Thompson of the dangers of proceeding pro se by informing him of the minimum and maximum sentences he would face if convicted. Despite continuous warnings on behalf of the circuit court and his court-appointed advisory attorney, Thompson clung to the belief that representation by an attorney was not in his best interest. “There is nothing more that the trial court could have done — the court had no right to insist on [the Appellant’s having counsel after he had refused it.”
 
 Taylor,
 
 812 So.2d at 1060 (¶ 18).
 

 ¶ 13. As previously mentioned, while a defendant has a constitutional right to assistance of counsel, a defendant also has a constitutional right to defend himself, and the circuit court must walk a fine line to ensure no trespass of either.
 
 Brooks v. State,
 
 835 So.2d 958, 960 (¶ 10) (Miss.Ct. App.2003). “Once the court is satisfied that such a decision has been made, the authority of the court to deny [a defendant's wish no longer exists.”
 
 Id.
 
 “The trial court, observing the demeanor of the defendant first-hand, is best suited to make those sort of subjective judgment calls.”
 
 Id.
 
 at (¶ 12). Because the record sufficiently establishes that Thompson knowingly and intelligently waived his right to counsel, we cannot find that the circuit court abused its discretion. Thus, Thompson’s first issue is without merit.
 

 II. HEARSAY TESTIMONY
 

 ¶ 14. In his second issue, Thompson claims the circuit court allowed the prosecution to elicit inadmissible hearsay testimony from Officer Varnado. Thompson’s second issue results from the following exchange during Officer Varnado’s testimony:
 

 Q: I’d like to bring your attention to January 7, 2007. Can you tell me about any contact you had with him on that date?
 

 A: Yes, on that day, Logan Griffin met myself and Agent Dan Hawn at a prearranged location and we discussed buying illegal drugs in McComb. Agent Hawn searched Logan’s vehicle. I searched Logan; issued Logan $250.00 official [Southwest Mississippi Narcotics Enforcement Unit] funds, the funds being photocopied. Sent [sic] Logan out to buy drugs. He said he knew someone that he could buy drugs from. He knew them by the name of “Head.” He knew him by a nickname, called him “Head.” It actually took place at 1119 Nelson Avenue.
 

 BY THOMPSON: Objection
 

 BY THE COURT: What’s the basis for your objection?
 

 
 *547
 
 BY THOMPSON: I’m only charged with a possession charge. I’m not charged with the sale of nothing, [sic] sir.
 

 BY THOMPSON: Relevance
 

 BY THE COURT: Oh, relevant? Alright. Well, this Court finds that the charge for today is possession with intent. As such, the intent has relevance and the Court is going to overrule your objection.
 

 BY THOMPSON: Thank you[,] sir.
 

 ¶ 15. According to Thompson, the circuit court improperly allowed Officer Varnado to present “testimonial hearsay.” However, Thompson is procedurally barred from raising this issue on appeal, as he objected to the testimony on the ground of relevancy rather than testimonial hearsay. Mississippi law states that an objection based on one specific ground waives all other possible grounds.
 
 Swington v. State,
 
 742 So.2d 1106, 1110 (¶ 9) (Miss.1999). Thompson may not raise his “testimonial hearsay” argument for the first time on appeal.
 

 ¶ 16. Because Thompson is procedurally barred from bringing a testimonial hearsay argument, Thompson must rely on the “plain-error” exception to the procedural bar. To establish plain error, Thompson “must prove that the inclusion of the [testimony at issue] seriously affects the fairness, integrity or public reputation of judicial proceedings.”
 
 Neal v. State,
 
 15 So.3d 388, 403 (¶ 32) (Miss.2009) (quoting
 
 United States v. Olano,
 
 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). “To determine if plain error has occurred, [this Court] must determine ‘if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.’”
 
 Id.
 
 (quoting
 
 McGee v. State,
 
 953 So.2d 211, 215 (¶ 8) (Miss.2007)).
 

 ¶ 17. “The standard of review regarding the admission or exclusion of evidence is abuse of discretion.”
 
 Terrell v. State,
 
 952 So.2d 998, 1005 (¶ 31) (Miss.Ct.App.2006). We will only find an abuse of discretion if “a defendant shows clear prejudice resulting from an undue lack of constraint on the prosecution or undue constraint on the defense.”
 
 Id.
 
 In other words, “[t]his Court shall not disturb a trial court’s decision unless it is clearly wrong.”
 
 Id.
 

 ¶ 18. Officer Varnado’s testimony was offered to show how Thompson came under investigation. “[W]e recognize that there are some circumstances where an officer can testify at trial about information provided to him by informants.”
 
 Stubbs v. State,
 
 878 So.2d 130, 134 (¶ 10) (Miss.Ct.App.2004). The information from the confidential informant concerning where he could acquire drugs simply led Officer Varnado to investigate Thompson.
 

 ¶ 19. There was no error in allowing the testimony of Officer Varnado. Even assuming, for the sake of discussion, that there was some error, because the “weight of the evidence against the accused is overwhelming,” this testimony was not prejudicial.
 
 Clark v. State,
 
 891 So.2d 136, 142 (¶29) (Miss.2004) (quoting
 
 Riddley v. State,
 
 777 So.2d 31, 35 (¶ 11) (Miss.2000)). A significant amount of marijuana and cocaine was found in a house undisputed to be Thompson’s. Additionally, authorities found small plastic bags, a scale, and a large amount of money in Thompson’s home. Officer Varnado’s testimony merely showed why an investigation was commenced against Thompson. Additionally, the circuit court issued a limiting instruction to the jury. That is, the circuit court instructed the jury as follows:
 

 
 *548
 
 the testimony of witnesses, regarding the prior drug activity of David Thompson, was offered in an effort to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, on the part of the defendant, David Thompson. You may give this testimony such weight and credibility as you deem proper under the circumstances. However,
 
 you cannot and must not consider this testimony in any way regarding whether or not this defendant is guilty or not guilty of the charges for which he is presently on trial
 

 (Emphasis added).
 

 ¶ 20. To summarize, Thompson may not raise his “testimonial hearsay” argument for the first time on appeal. Thus, this issue is procedurally barred. However, procedural bar notwithstanding, the circuit court did not err in admitting Officer Var-nado’s testimony. It was admissible to tell the story of the investigation. Officer Var-nado testified that, on the morning of January 7, 2007, a confidential informant went to an address identified as Thompson’s residence and purchased narcotics from Thompson, who he knew as “Head.” Officer Varnado had earlier obtained a search warrant and executed it that same day. Officer Varnado’s testimony regarding those events was admissible pursuant to Mississippi Rule of Evidence 404(b) to demonstrate the intent element of both counts of possession of narcotics with intent to distribute them. Furthermore, the circuit court issued a limiting instruction to the jury. Consequently, Thompson did not suffer undue prejudice due to the admission of the testimony at issue. It follows that we find no merit to this issue.
 

 III. RIGHT TO CALL AND CONFRONT WITNESSES
 

 ¶21. At trial, Thompson claimed that Timothy Jones, assistant district attorney in Pike County, was present during the search of his house. Thompson argued that Jones should recuse himself from prosecuting his case. The circuit court found no merit to Thompson’s argument. Thompson then sought to call Jones as a witness. The circuit court prohibited Thompson from calling Jones. According to Thompson, by refusing to allow him to call Jones as a witness, the circuit court infringed on his right to confront witnesses against him.
 

 ¶ 22. To determine whether Jones would be a necessary witness, the following colloquy took place:
 

 BY THE COURT: Mr. Jones, as an officer of the Court, I’m going to pose a few questions to you right now. I think you have discussed on the record the fact that you were at least present on or about the time of the search in question?
 

 BY MR. JONES: Yes, sir, during some portion of it.
 

 BY THE COURT: Does the State have any intention of using you as a witness in this case?
 

 BY MR. JONES: We do not, Your Hon- or.
 

 BY THE COURT: Are there any other competent witnesses who can testify as to the search in this case?
 

 BY MR. JONES: Yes, sir, Your Honor.
 

 BY THE COURT: Are there any additional persons who are competent to testify to any and everything that you saw and heard that day?
 

 BY MR. JONES: Yes, sir, Your Honor. And I am not a witness to any significant element or any significant fact of the case.
 

 BY THE COURT: Were you simply present during the search?
 

 BY MR. JONES: I was present, yes.
 

 
 *549
 
 BY THE COURT: During the entire search of part of it?
 

 BY MR. JONES: A small portion of the search. I do remember entering the residence, but largely I was outside standing next to a vehicle.
 

 ¶ 23. Although it was initially determined after this discussion that Jones would likely not be a necessary witness, the issue arose again prior to trial after Thompson chose to proceed pro se. Because he wanted to call Jones as a witness on his behalf, Thompson wanted to disqualify the assistant district attorney from prosecuting the case. Due to Thompson’s request, Jones was again questioned by the circuit court:
 

 BY THE COURT: Mr. Jones, can you please disclose for the record the level of your involvement, level and extent of your involvement in the search of the home on the date which it is alleged in this indictment.
 

 BY MR. JONES: I did not participate in the search at all. I was present on the premises of the search, legally outside the residence near vehicles. I did walk through the house, you know, once or twice maybe during the course of the time that I was there. I am not a witness that discovered any evidence or even observed the discovery of any evidence that was there. I was there for the purpose of providing some legal advice with regard to both criminal evidence and civil evidence that was to be seized.
 

 ¶ 24. Thompson was then allowed to question Jones on the record regarding his involvement with the search. Despite Thompson’s repeatedly questioning Jones regarding Thompson’s belief that Jones was present during the search of the home, Jones consistently stated that he was only there to provide legal advice on any potential issues that may have arisen during the search, and he did not recommend that anyone be arrested. Because Thompson did not provide evidence that Jones was present at the search to help build a case against Thompson or for any other unethical reason, the circuit court denied Thompson’s motion to remove Jones from prosecuting the case.
 

 ¶ 25. The Mississippi Supreme Court has previously held that Mississippi’s Constitution “provides that an accused of right may have compulsory process for obtaining witnesses in his favor, but this does not mean he may subpoena anybody or anything as he pleases.”
 
 Goforth v. City of Ridgeland,
 
 603 So.2d 323, 327 (Miss.1992). Jones was not a necessary witness, as he had nothing of significance to offer at trial. Thompson was not prejudiced because he was not allowed to call Jones as a witness. Accordingly, we find no merit to this issue.
 

 IV. WEIGHT OF THE EVIDENCE
 

 ¶ 26. In his fourth and final issue, Thompson argues that “the verdict of the jury is contrary to the weight of credible evidence.” We are mindful that, as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶18) (Miss.2005). The supreme court has further instructed that, when reviewing a circuit court’s decision to deny a motion for a new trial:
 

 the [appellate] court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. How
 
 *550
 
 ever, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Id.
 
 (footnote and internal citations and quotations omitted).
 

 ¶ 27. Pursuant to the indictment against him, Thompson was charged with the following:
 

 possession of at least five hundred (500) grams but less than one (1) kilogram of marijuana, a controlled substance, with the unlawful and felonious intent ... to distribute said marijuana, to some other person or persons ... the above-described possession of marijuana having then and there occurred within one thousand five hundred (1,500) feet of that certain Mt. Olive Baptist Church, McComb, Mississippi [and] possession of at least two (2) grams but less than ten (10) grams of cocaine, a controlled substance, with the unlawful and felonious intent ... to distribute said cocaine to some other person or persons ... the above-described possession of cocaine having then and there occurred within one thousand five hundred (1,500) feet of that certain Mt. Olive Baptist Church, McComb, Mississippi.
 

 Thompson testified that 1119 Nelson Avenue was his residence. Authorities seized the following evidence as a result of the search of Thompson’s home: (1) approximately 105 grams of marijuana in the stove; (2) approximately 408 grams of marijuana, small sandwich bags, and a “finger scale” in the closet of the master bedroom; (3) approximately 456 grams of marijuana in Thompson’s clothing; (4) approximately 20 grams of crack cocaine in the freezer or refrigerator; and (5) $2,000 in cash under the mattress of the bed in the master bedroom. Additionally, Thompson’s home is within 1,500 feet of Mt. Olive Baptist Church.
 

 ¶ 28. Viewing the evidence in the light most favorable to the jury’s verdicts, we cannot find that either guilty verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Accordingly, we find no merit to this issue.
 

 ¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF COUNT I, POSSESSION OF AT LEAST 500 GRAMS BUT LESS THAN ONE KILOGRAM OF MARIJUANA WITH THE INTENT TO DISTRIBUTE WITHIN 1,500 FEET OF A CHURCH, AND SENTENCE OF TWENTY YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND COUNT II, UNLAWFUL POSSESSION OF AT LEAST TEN BUT LESS THAN THIRTY GRAMS OF COCAINE WITH THE INTENT TO DISTRIBUTE WITHIN 1,500 FEET OF A CHURCH, AND SENTENCE OF FIFTEEN YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 
 *551
 
 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR.