MAXWELL, J.,
for the Court:
¶ 1. Peter Love shot and killed Trentis Thornton in front of several witnesses. While it is undisputed Trentis was unarmed, Love argued the shooting was justified because Trentis was the aggressor and Love believed Trentis was reaching for a gun. An Attala County jury found Love guilty of murder, rejecting his self-defense claim. On appeal, Love argues the trial judge denied him a meaningful opportunity to present his self-defense theory by allowing defense witnesses to testify Trentis was reaching behind his back, but restricting them from speculating he was going for a gun. We find the judge’s ruling did not violate Love’s right or ability to present a meaningful defense. From the record it is clear that Love was able to meaningfully present his self-defense theory from opening statement through closing argument — even testifying himself that he believed Trentis was reaching for a gun. Thus, we affirm.
¶ 2. We find his remaining challenges to his counsel’s performance more appropriate for post-conviction collateral review, so we dismiss those claims without prejudice.
Facts and Procedural History
¶ 3. On October 27, 2010, Trentis and his wife, Donna, were sitting in their vehicle, outside of a friend’s house, when a Chevrolet Lumina pulled into a driveway directly across the street. Several men, including Love, got out of the Lumina. According to witnesses, Love saw Trentis looking in his direction and shouted at Trentis, “What the f— are you looking at?” Love began crossing the street, and the two men eventually ended up meeting behind Trentis’s truck and out of Donna’s line of sight. During what escalated into an argument, Love shot and killed Trentis, who was unarmed. Love fled the scene, but later turned himself in to the Attala County Sheriffs Department.
¶ 4. After being advised of his constitutional rights, Love signed a Miranda[1] waiver-of-rights form. He initially denied any involvement in the shooting, instead insisting the gunshot had come from a passing car. But after speaking with his mother, Love gave a second, differing story. He admitted shooting Trentis, but claimed he did so in self-defense when Trentis “rushed him” in a threatening manner. He also claimed Trentis had bullied him in the past and had previously threatened him with a gun.
¶ 5. At trial, the State’s pathologist, Dr. Steven A. Bigler, testified that Trentis died from massive brain trauma caused by a single bullet to the right side of his head. Dr. Bigler did not discover any soot or stippling on Trentis’s skin, which in his opinion suggested Trentis had been shot from a distance of greater than a few feet. The State highlighted Dr. Bigler’s testimony against Love’s claim that he shot Tren-tis in self-defense from a few feet.
¶ 6. Love’s attorney pursued a self-defense theory that Trentis was the aggres *954 sor and that Love shot him during the altercation because he mistakenly believed Trentis was reaching for a gun. Love’s brother and two other defense witnesses testified that Trentis grabbed Love and was reaching behind his back when Love shot him in the head.
¶ 7. Love testified in his own defense. He described a relationship with Trentis that had always been contentious. He testified that Trentis had previously threatened him on several occasions and that, nine days prior to the shooting, Trentis pointed a gun at him and fired several shots at him. So out of fear, Love claimed he purchased a pistol from someone at a housing project in Durant, Mississippi and began carrying it. Love admitted cursing at Trentis on the day of the shooting and confronting him that day. But he maintained that Trentis had grabbed him by the collar and was in the process of reaching behind his back for a gun when Love, fearing for his life, drew his own gun and opened fire.
¶ 8. The jury rejected Love’s self-defense argument and found him guilty of murder. The trial judge sentenced Love to life imprisonment. He now appeals.
Discussion
¶ 9. On appeal, Love neither challenges the sufficiency nor the weight of the evidence underlying his murder conviction. Instead, he narrowly focuses on the trial judge’s exclusion of a portion of his brother’s and another witness’s testimony, which he claims resulted in the denial of his right to present a meaningful defense. He also argues his trial counsel’s deficient representation prejudiced his defense.
I. Exclusion of Evidence and the Right to Present a Meaningful Defense
¶ 10. Love argues the trial judge denied him a meaningful opportunity to present his self-defense theory by ruling that his brother, Larry Winters, and another defense witness could only testify that they saw Trentis reach behind his back during the skirmish, but were prohibited from giving their “opinion” that he was going for a gun. As the trial judge put it, the witnesses could testify about where Tren-tis’s “hand was” shortly before Love shot him, but could not give their opinion about “what was in [Trentis’s] hand.”

A. Rule 701

¶ 11. While the excluded testimony was based on the witnesses’ speculation about what Trentis was allegedly reaching for, Love argues such testimony should have been admitted as lay-opinion testimony. We agree with Love that there are certain instances where non-expert statements of opinion may be admissible under Rule 701 — if “(a) [the opinion is] rationally based on the perception of the witness [and] (b) [is] helpful to the clear understanding of ... the determination of a fact in issue[.]” M.R.E. 701. And here, though it is arguable the evidence should have been admitted under Rule 701, our supreme court has been quick to emphasize that in making evidentiary rulings our “trial judge[s] enjoy[ ] a great deal of discretion as to the relevancy and admissibility of evidence.” Shaw v. State, 915 So.2d 442, 445 (¶ 8) (Miss.2005).
¶ 12. But further, and perhaps most important, both our evidentiary rules and case law instruct that even if the exclusion was improper, “[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]” M.R.E. 103(a); see also Mingo v. State, 944 So.2d 18, 28 (¶ 27) (Miss.2006) (citing Parks v. State, 884 So.2d 738, 742 (¶ 9) (Miss.2004)) (appellate courts will not reverse a trial judge’s evidentiary ruling unless the error *955 adversely affects a party’s substantial right). So even if the exclusion was erroneous, reversal is only proper if Love was denied a meaningful opportunity to present his self-defense argument. Upon review, we find he was not.

B. Love’s Self-defense Argument

¶ 13. Under Mississippi law, “a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court.” Giles v. State, 650 So.2d 846, 849 (Miss.1995) (quoting Hester v. State, 602 So.2d 869, 872 (Miss.1992)). Here, Love pursued a self-defense theory that Trentis was the aggressor and that Love believed Trentis was breaking for a gun when he shot him. Love’s attorney pressed this theory consistently from Love’s opening statement through closing argument. And at Love’s request, the jury was instructed that self-defense was a lawful justification for the murder charge.
¶ 14. Though it is undisputed that Trentis did not possess a weapon when Love shot him, as mentioned, two of Love’s defense witnesses testified that Love was reaching behind his back during their exchange. Even in light of the exclusion, from the context of the questions and responses, the jury was free to infer Tren-tis was going for a gun. Furthermore, one of these witnesses, Love’s brother, said that after the shooting, Love told him, “I had to handle my business. It was going to be me or him. Did you see him? He was fixing to get me.”
¶ 15. When asked if “handle your business” meant to have “to defend myself and shoot somebody in self-defense,” Love’s brother responded: “That’s the way I took it.” A third defense witness testified: “The way they [were] positioned, it looked like Trentis could have had something. But I didn’t see it, because I caught the back glimpse of it. So I actually can’t say, but [Trentis] was positioned sideways like he had something.”
¶ 16. Finally, Love took the stand in his defense. He testified that Trentis was the aggressor and that Trentis had previously threatened him with a pistol and even shot at him a little over a week earlier. In describing Trentis’s alleged actions immediately before he shot Trentis, Love recalled Trentis had “reached and grabbed [him] by the collar[.]” Love claimed Tren-tis then “reached behind his back real quick-” Love testified that when Tren-tis did that, “I thought he was fixing to kill me. I was scared.” The following exchange then occurred:
[Love’s Attorney]: What did you think he was going to kill you with?
[Love]: The gun that he showed me when I was walking down the road.
[Love’s Attorney]: The gun that he shot at you with too.
[Love]: Yes, ma’am.
Thus, not only was the self-defense theory before the jury, but there was also testimony that Trentis was reaching for a gun.
¶ 17. Love’s argument about the effect on his right to present a meaningful defense is similar to one addressed by our supreme court in the context of a “misidentification” defense in Williams v. State, 991 So.2d 593, 597-600 (¶¶ 9-16) (Miss.2008). In Williams, the investigating officer testified that the robbery victim had not mentioned the assailant’s “buck gold teeth.” Id. at 598 (¶ 13). So the defendant sought to display his “gold teeth decorated with carved initials” to the jury to further his misidentification defense, but not be subject to cross-examination. Id. at 597 (¶ 10). The trial judge denied this request, and on appeal Williams argued the erroneous evidentiary ruling de *956 nied him an opportunity to present a meaningful defense. Id
¶ 18. But the supreme court pointed out that while the officer stated that the victim had not mentioned the assailant’s gold teeth, the jury was ultimately informed by another witness, and it was vigorously argued by defense counsel during closing argument that Williams had gold teeth. Id at 598-99 (¶¶ 12-14). Because the mis-identification defense was adequately presented, the supreme court found the judge’s ruling “prohibiting Williams from displaying his gold teeth for the jury unless he testified did not violate his right to present a meaningful defense.” Id at 599 (¶ 15).
¶ 19. After reviewing the record here, we reach a similar conclusion. We find Love’s own testimony, as well as that of his defense witnesses, supports that Love was able to meaningfully present his self-defense theory. Thus, we find no reversible error in the trial judge’s evidentia-ry ruling.
II. Ineffective-Assistance-of-Counsel Claim
¶ 20. Love also argues his trial counsel was ineffective for failing to (1) invoke the Weathersby rule[2] at the close of the State’s case-in-chief, (2) conduct a voir dire examination of the State’s pathologist, (3) object to certain forensic testimony from the State’s pathologist about the absence of stippling, (4) object to the testimony of the State’s pathologist that his definition of homicide was “murder,” and (5) object to the State’s questioning of Love about his failure to call a witness equally accessible to both sides.
¶ 21. These allegations concern trial strategy. And we have been instructed to “strongly presume that counsel’s conduct falls within a wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy.” Liddell v. State, 7 So.3d 217, 219-20 (¶ 6) (Miss.2009) (quoting Bennett v. State, 990 So.2d 155, 158 (¶ 9) (Miss.2008)). While our review shows nothing to overcome this presumption, the record is not as developed as it would be in a post-conviction-relief proceeding. There is also no stipulation “that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999).
¶ 22. Because there are no obvious deficiencies on Love’s counsel’s part and the State has not stipulated the record is adequate to address Love’s claims, we dismiss Love’s ineffective-assistance-of-counsel claim without prejudice.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
*957 LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON AND FAIR, JJ„ CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In 1933, our supreme court held in Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933), "that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” A defendant who meets the Weathersby rule is entitled to a directed verdict of acquittal. Fryou v. State, 987 So.2d 461, 467 (¶ 34) (Miss.Ct.App.2008) (citing Green v. State, 631 So.2d 167, 175 (Miss.1994)).