# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00598-COA

**TORY LAMAR CROOM**                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2022 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/14/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Tory Lamar Croom was tried and convicted in the Circuit Court of Forrest County, Mississippi, for burglary of a dwelling (Count I) and for conspiracy to commit burglary of a dwelling (Count II). For his conviction of Count I, Croom was sentenced to a term of twenty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years to serve and five years suspended, and placed on five years of post-release supervision. For his conviction of Count II, Croom was sentenced to serve a term of five years in the custody of the MDOC. The sentences in Count I and Count II were ordered to run concurrently with each other. It is from these convictions that he appeals.

# FACTS

¶2. According to Steven Graves' testimony at trial, he and Tory Croom were hanging out together on July 9, 2021, at Tory Aleta's trailer in Hattiesburg. Tory Aleta (Aleta) was Croom's girlfriend. Croom and Graves left in a truck belonging to Tory Aleta's father, Lonnie Aleta (Lonnie), and went riding around, ending up in the "Dixie" community. Croom had permission to use Lonnie's truck. While looking for a place to park and "get high," they turned onto a gated gravel drive that led to Donnie Nguyen's house in Forrest County. While Croom remained in the driver's seat of the truck, Graves got out of the truck and pushed the gate open. Croom drove the truck through the gate onto the property and parked behind the house between the house and the barn so that they would not be seen. When they saw no one was at home, they decided "to see what [they] could find worth money." First, they went into the barn and then turned their attention to the house. Graves pulled a screen off a window, but could not get in because the window was locked. Croom then kicked in the back door with one big kick, which splintered the wood causing the door to fly open. Croom and Graves went inside and made their way down the hall to a bedroom where Graves found a laptop on a bed. Graves took the laptop, and as they were coming back through the house, Croom noticed the house had a "Ring doorbell thing." They panicked and ran out of the house. On his way out, Graves got two beers from the refrigerator. They got in the truck and left.

¶3. Nguyen testified that he went to work around 8:00 a.m. on the morning of the burglary. He has a Ring alarm system that sends notifications straight to his phone. That day,

2

he forgot to arm his alarm system and did not shut his gate. However, his alarm system still notifies him whenever a door is opened or one of the sensors detects motion. Around 2:00 p.m. he got a notification that his back door was opened, and the motion sensor went off in the hallway leading to his bedroom. At that point, he armed his system and drove to his house. When he got home, he did not see anybody, but he did see the damage to the back door and the window screen removed. He entered his residence through the back door that had been kicked open. He went through the house to see if anything was missing, and he noticed that the laptop had been taken off his bed. Nguyen testified that he wanted to alert the authorities at that point but did not know how long it would take, and he was really needed back at work. He locked up everything as best as he could, armed his alarm system, and went back to work. He made a report to law enforcement two to three hours later. Law enforcement asked him if he had any camera footage. Nguyen's landlord had a trail camera in the area, and Nguyen was able to obtain the footage the next day. It showed the truck leaving and the passenger in the truck having the laptop and a beer.

¶4.     Forrest County Deputy Keith Leroy was the investigator assigned to the case. He spoke with Deputy Simon, who originally responded to the call. Leroy obtained the trail camera photos of the truck and sent them out to local law enforcement agencies. He also placed the photos on the sheriff's office's Facebook page. Lonnie's ex-girlfriend advised the sheriff's office that the truck belonged to Lonnie. Deputy Leroy contacted an agent with a drug task force (HIDTA) that knew where the vehicle was located. After a search warrant was obtained, Leroy went with others to Lonnie's house to execute the warrant. The truck

3

was present, but the laptop was not. Leroy spoke with Lonnie, who acknowledged that the truck was his and that he knew why law enforcement was looking for the truck. Lonnie told the deputy that he knew about the Facebook post of his truck, but he did not know about any burglary. He did tell Leroy that he heard Croom and another guy talk about a laptop.

¶5. Leroy then talked with Croom, who was at Aleta's residence during the search. At first, Croom denied being involved in a burglary. Later in the conversation, he admitted that he was there but denied going into Nguyen's house. After being shown some of the photos, Croom admitted that he was there and that he was driving the truck, but he still maintained he did not go into the house.

¶6. Lonnie testified that after he determined law enforcement was looking for his truck in connection to a burglary, he asked Croom, "Man, what is all this crap about?" According to Lonnie, Croom admitted that it was him, and he apologized. Croom told Lonnie that he and "Country" (Graves) went to a house, got a computer out of it, and he (Croom) hid the computer in another house. Lonnie testified that Croom admitted to the house burglary and told Lonnie that he went up to the door and kicked it open. On cross-examination, Lonnie said Croom told him that he broke into the house, got a computer, and put the computer in a drawer in another house "over by Krystal's."

¶7. Deputy Leroy also testified that during his investigation, he got information that Graves was trying to sell a laptop. After Graves and Anthony Whitworth were arrested on unrelated charges, the laptop was recovered from Whitworth's truck. A photo of the laptop recovered from Whitworth's truck was admitted into evidence at trial. Nguyen identified the

laptop as his laptop that was stolen during the burglary of Nguyen's house.

¶8.    The jury returned guilty verdicts on both counts of the indictment. Croom filed a "Motion for Judgment Non Obstante Verdicto, or, In The Alternative, For a New Trial." After the trial court denied his post-trial motion, Croom perfected an appeal of his convictions and sentences.

## ANALYSIS

¶9.    Croom raises two issues on appeal, which we address separately below.

**I.    Did the trial court err by refusing to instruct the jury as to the lesser-included offense of trespass?**

¶10.    "When a party claims that he is entitled to a lesser-included-offense instruction, the standard of review is de novo, as it is a question of law." *Buchanan v. State*, 84 So. 3d 812, 815 (¶8) (Miss. Ct. App. 2011) (citing *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007)). Trespass is a lesser-included offense of burglary. *Fontenot v. State*, 287 So. 3d 322, 328 (¶23) (Miss. Ct. App. 2019) (citing *Harper v. State*, 478 So. 2d 1017, 1021 (Miss. 1985)). A party is entitled to a lesser-included-offense instruction only if there is "an evidentiary basis in the record" to support it. *Batiste v. State*, 121 So. 3d 808, 844 (¶69) (Miss. 2013) (citing *Anderson v. State*, 79 So. 3d 501, 505 (Miss. 2012)). Further, concerning lesser-included-offense instructions, this Court stated in *Eldridge v. State*, 232 So. 3d 767, 769-70 (¶9) (Miss. Ct. App. 2017):

> "[A] defendant is entitled to have every legal defense he asserts to be submitted as factual issue for determination by the jury under proper instruction of the court." *Love v. State*, 121 So. 3d 952, 955 (¶13) (Miss. Ct. App. 2013). "However, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in

5

the instructions, or is without foundation in the evidence." *Newell v. State*, 49 So. 3d 66, 73-74 (¶¶20-21) (Miss. 2010) (citation omitted). *"A lesser-included-offense instruction should be granted __unless__ the trial court, and ultimately the appellate court, can say"* that *"[t]aking the evidence in the light most favorable to the accused, and considering all reasonable inferences which may be drawn in favor of the accused from the evidence, no reasonable jury could find the defendant guilty of the lesser included offense and conversely not guilty of at least one essential element of the principal offense."* Pierce [*v. State*], 107 So. 3d [1011,] 1014 (¶11) [(Miss. Ct. App. 2012)] (citations and quotation marks omitted).

(Emphasis added).

¶11.    On appeal, Croom argues that "a reasonable juror could have found [him] guilty of trespass but not guilty of burglary." He points out that there was testimony from Graves that they were riding around to get high and were not planning to commit a burglary. He further contends in his brief that

> Officer Keith Leroy testified that he spoke with Croom during the search of Aleta's residence, and Croom told him, "I was there but I didn't go in" and/or "I was there driving, but I didn't go in." (Tr.124-125)[.] Although Graves claimed that Croom was the person who kicked in the door and entered the residence, the jury was entitled to reject that portion of Graves's testimony.

However, there was nothing in the record to show that this argument was made to the trial court. Instead, the record reveals that an instruction conference was initially conducted off the record. The trial court then went back on the record to announce which instructions would be given, which were refused, and which were withdrawn. The trial court indicated that it refused the lesser-included trespass instruction as having no factual basis:

> [T]he evidence in a particular case generally warrants granting a lesser and included offense instruction if a rational or reasonable jury could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser offense. There is just no proof in this record in my mind that would justify - - and you have to consider them to be rational people, that

6

would consider what happened could have been a trespass as it applies to Mr. Croom[.] But I just don't think any reasonable human being could believe that your client kicked down the door and went in first and just because Country found the laptop first and headed out. And the testimony was that when the sound went off, what did he say? He said your client got shocked and alerted and they decided to get the heck out of there and Country got two beers on the way out. Came in the same truck, left in the same truck, had the laptop in the truck. You know, it's just not there.

Nowhere in the record, either before or after the trial court's ruling, does counsel for Croom point the trial judge to any record evidence to support the giving of the requested trespass instruction. In similar circumstances, in *Clayton v. State*, No. 2021-KA-00505-COA, 2023 WL 1983169, at *4-5 (¶¶11-12) (Miss. Ct. App. Feb. 14, 2023), *petition for cert. filed* (Miss. Sept. 26, 2023),[1] this Court stated:

> Further, in *Woods v. State*, 242 So. 3d 47, 57 (¶39) (Miss. 2018), the supreme court described the defendant's burden to support the giving of a lesser-included-offense instruction:
>
>> "A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury's finding on that theory." *Thomas v. State*, 48 So. 3d 460, 469 (¶23) (Miss. 2010). "To be entitled to a lesser-included-offense instruction, a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Gilmore v. State*, 119 So. 3d 278, 286 [(¶13)] (Miss. 2013).
>
> *Thus, it was Clayton's responsibility at trial to point the trial judge to some record evidence from which the jury could have found him not guilty of first-degree murder but guilty of second-degree murder. However, after the State objected and argued that there was no factual basis to support a second-degree murder instruction, Clayton's trial counsel offered no argument whatsoever in support of giving the second-degree murder instruction.* Therefore, the trial court did not err by refusing instruction D-10.

---

[1] This opinion is not yet legal precedent.

(Emphasis added). Just as in *Clayton*, there is nothing in the record to show that Croom pointed the trial judge to any evidence that would support giving a trespass instruction or that Croom made any argument in support of the instruction in response to the court's ruling.

¶12. In any event, Croom did not testify at trial, and on appeal he relies only on statements he gave to law enforcement to support his contention that a trespass instruction should have been given. Deputy Leroy testified that during his conversation with Croom about the burglary, Croom gave at least three versions of his involvement in the burglary. First, he denied being involved in any burglary. Second, Croom admitted he was present at the burglary but said he did not go into the house. Third, Croom admitted that he was the driver of the truck but said he did not go in the house. Even if the jury had believed Croom did not go into the house, that would not negate his potential culpability for burglary of a dwelling as an aider and abettor.[2] In these statements to law enforcement, Croom does not deny kicking in the door to gain access to the house. He does not deny knowing the burglary was about to occur or that it had occurred. In fact, he admitted to being the driver going to and leaving Nguyen's house. The jury also heard Lonnie's testimony as to admissions Croom made to him about his part in the burglary. Lonnie testified that Croom told him that he broke into the house by kicking the door in. He also told Lonnie that he took a computer from Nguyen's house and hid it in another house. In addition to Croom's statements to Leroy and Lonnie that implicated Croom in the burglary, the jury also heard the testimony of Graves, his co-defendant, as outlined above.

---

[2] The jury was given the instruction approved in *Milano v. State*, 790 So. 2d 179, 185 (¶21) (Miss. 2001), concerning accomplice culpability.

8

¶13. In another similar case, this Court found the following in *Johnsey v. State*, 296 So. 3d 93, 96-97 (¶16) (Miss. Ct. App. 2019):

> There is nothing in the record to support a finding that, when taking the evidence in the light most favorable to Johnsey, a reasonable jury could find Johnsey guilty of only the lesser-included offense of trespass. As such, there was no basis to support a lesser-included offense instruction on trespass, and the circuit court did not err in refusing instruction D-7.

Likewise, under the facts of the present case, the trial judge was correct in finding that no reasonable jury could have found Croom guilty of only the lesser-included offense of trespass.

¶14. Even if we had found that the trial court erred by failing to give the requested instruction, it would have been harmless error. Concerning harmless error, the supreme court stated in *Kolberg v. State*, 829 So. 2d 29, 48-49 (¶¶35-36) (Miss. 2002), *overruled on other grounds by Rowsey v. State*, 188 So. 3d 486, 494 (¶¶21-22) (Miss. 2015):

> *Conley v. State*, 790 So. 2d 773, 793 (Miss. 2001) is similar to this case. Conley was a capital murder case in which the trial court refused a manslaughter instruction which correctly defined "culpable negligence." Instead, it allowed an instruction which did not fully define "culpable negligence." Justice Mills, writing for this Court, held that the error was harmless:
>
>> The error did not contribute to the verdict as the jury unanimously agreed that (appellant) murdered (victim) while engaged in the crime of kidnapping. *Error is harmless if it is clear beyond a reasonable doubt that it did not contribute to the verdict*[.] [(C)iting *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [(1967)).] Therefore, although the trial court may have erred in refusing to grant (Appellant's) manslaughter instruction containing an adequate definition of culpable negligence, it was harmless error.
>
> Even back in 1941, this Court was recognizing the principle discussed by the

*Conley* court. In *Lancaster v. State*, 200 So. 721, 722 (Miss. 1941), *this Court stated that errors were harmless where "the same result would have been reached had they not existed."*

(Emphasis added).

¶15. In the case at bar, Jury Instruction D-17, the requested trespass instruction, began by instructing the jury that it must first acquit Croom of the burglary-of-a-dwelling charge before it could consider the lesser-included charge of trespass:

> If you find that the State has failed to prove any one or more of the essential elements of residential burglary in Count I of this indictment, you must find Tory Lamar Croom not guilty of the charge in Count I. You will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of willful trespass . . . .

The jury in this case found that the State had proved all the elements of burglary of a dwelling beyond a reasonable doubt. Accordingly, following the instruction, the jury never would have considered the offense of trespass. Therefore, we can say beyond a reasonable doubt that any error in the refusal of the trespass instruction did not contribute to the guilty verdicts. Just as noted in *Kolberg*, the result would have been the same had the error not existed.

¶16. Based upon the above, as well as the otherwise overwhelming evidence of Croom's guilt, we find this assignment of error is not persuasive.

**II.    Was the evidence sufficient to support a verdict of guilty as to conspiracy?**

¶17. Croom contends that the evidence was legally insufficient to support his conviction for conspiracy to commit burglary of a dwelling. He argues that the evidence "failed to establish beyond a reasonable doubt that [he] reached a 'union of the minds' to burglarize

10

the house with Graves before the actual commission of the crime." He also points out that Graves was the only one who took anything from the house.

¶18. Concerning our review of challenges to the sufficiency of the evidence to support a conviction, in *Alvarado v. State*, 343 So. 3d 391, 396 (¶10) (Miss. Ct. App. 2022), this Court stated:

> "In reviewing a challenge to the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the prosecution and accept all evidence supporting the verdict as true." *Dampeer v. State*, 989 So. 2d 462, 464 (¶7) (Miss. Ct. App. 2008). We then determine, based on the evidence, whether reasonable, fair-minded jurors could have found the defendant guilty. *Goldman v. State*, 406 So. 2d 816, 819 (Miss. 1981). That is, "whether a reasonable juror could rationally say that the State" "proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017) (citing *Poole v. State*, 46 So. 3d 290, 293-94 (¶10) (Miss. 2010)).

¶19. Pursuant to Mississippi Code Annotated section 97-1-1(1)(a) (Rev. 2020), to prove a conspiracy, the State must show that two or more persons conspired to commit a crime. In *McLaughlin v. State*, 338 So. 3d 705, 721 (¶46) (Miss. Ct. App. 2022), this Court set out the proof required to support a conspiracy conviction:

> McLaughlin was convicted of conspiracy to commit armed robbery pursuant to Mississippi Code Annotated section 97-1-1(1)(a) (Rev. 2014), which states that it is a crime if two or more people conspire together to commit a crime. The Mississippi Supreme Court has stated, "The only element of conspiracy to commit armed robbery is two or more persons agreeing to commit armed robbery." *Lenoir*, 224 So. 3d at 91 (¶19). . . . *No formal agreement to commit a crime is required; instead, a "jury may infer a conspiracy from the circumstances, 'particularly by declarations, acts, and conduct of the alleged conspirators.'" Id.* (quoting *Young v. State*, 910 So. 2d 26, 29 (¶11) (Miss. Ct. App. 2005)). *"Once the existence of a conspiracy is shown, only slight evidence is required to connect a particular defendant with the conspiracy."* *Stokes v. State*, 141 So. 3d 421, 428-29 (¶31) (Miss. Ct. App. 2013) (quoting *Morgan v. State*, 741 So. 2d 246, 255 (¶27) (Miss. 1999)).

(Emphasis added). In *Graham v. State*, 120 So. 3d 382, 387 (¶21) (Miss. 2013), the supreme court stated:

> This Court consistently has upheld convictions for conspiracy based on the acts of the alleged coconspirators in the absence of an express agreement.

¶20. In the present case, Jury Instruction Number 11 provided that the State was required to prove that Croom conspired with Graves to commit the crime of burglary of a dwelling. To prove this conspiracy, the State was not required to prove that Graves and Croom made an express agreement; rather, their "acts and conduct" were sufficient to prove that they conspired to break into Nguyen's house and steal an item of value. The proof showed that they acted in concert. As outlined above, while Croom and Graves were riding around looking for a place to park and get high, that changed when they pulled onto Nguyen's property and found no one at home. They then decided to see what they could steal to make money. When they found nothing of value in the barn, they turned their attention to the house. While Graves was unable to gain access to the house through a window, Croom kicked in the door and entered the house, followed by Graves. They went down the hall into a bedroom, and Graves took a computer that was on the bed. On their way back down the hall, Croom spotted the security system, and they quickly exited the house.

¶21. In *Tucker v. State*, 62 So. 3d 397, 408 (¶41) (Miss. Ct. App. 2010), this Court found:

> In discussing what evidence will be allowed in to establish a conspiracy case, the *Griffin* court stated: "Admissible evidence in a conspiracy case covers a wide range[;] [*c*]*ommission of an offense is admissible as showing the conspiracy, since what the defendants actually did is evidence of what they intended to do." Id*. (citing *King v. State*, 123 Miss. 532, 86 So. 339 (1920)).

(Emphasis added). In the present case, Graves testified that he and Croom decided to break

12

in and steal items of value. As noted in *Tucker*, their subsequent actions are proof of what they "intended" or conspired to do.

¶22. Viewing the evidence in the light most favorable to the prosecution, along with all reasonable inferences drawn therefrom, we find that the evidence was legally sufficient to support Croom's conviction for conspiracy to commit burglary of a dwelling.

## CONCLUSION

¶23. We find that the trial court did not err by refusing Croom's proposed lesser-included trespass instruction. Further, the evidence was sufficient to support his conspiracy conviction. Croom's convictions and sentences are affirmed.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**