# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00145-COA

LAURIE S. BARNES A/K/A LAURIE SHONTELLE ASHLEY

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

DATE OF JUDGMENT: 12/15/2022
TRIAL JUDGE: HON. STANLEY ALEX SOREY
COURT FROM WHICH APPEALED: JASPER COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT: OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL BY: BARBARA BYRD
DISTRICT ATTORNEY: CHRISTOPHER DOUGLAS HENNIS
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 06/25/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Laurie Barnes was convicted in the Jasper County Circuit Court for non-residential burglary. On appeal, she claims that the circuit court erred by (1) refusing her proposed jury instruction on the lesser-included offense of trespass and (2) allowing a witness to testify to hearsay statements that violate her rights under the Confrontation Clause, despite no objection. Finding no reversible errors, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In January 2017, the Jasper County Sheriff's Department was alerted to a home-alarm

call at 3616 County Road 23. Castiel Moffett owned the home but did not live there, and the home was left unoccupied. Officer Stacy Tatum arrived at the scene to investigate. The dispatcher informed Officer Tatum that the back door had activated the alarm. Officer Tatum observed that the back door appeared to have been pried open. He noticed that a game camera was aimed at the back door.

¶3.     The game camera captured several photographs of Barnes on the property. One photo showed Barnes' SUV parked in the driveway. Another photo showed Barnes and co-indictee Roberta Jones approaching the house. The photos were time-stamped, and multiple photos showed that Barnes and Jones went to the home twice that day, about an hour apart.

¶4.     While on the property, Officer Tatum talked with Anthony Sims, Moffett's neighbor and cousin. Sims testified that he noticed a man in a Jeep Grand Cherokee parked at Moffett's home. When Sims approached, the man honked the horn. Sims testified that he talked to the man, who explained he was there looking for a place to rent or buy. Sims informed him that the place was not for sale and that he had to vacate the premises. Sims testified he recognized that the Jeep belonged to Barnes, but he did not see her on the property.

¶5.     Investigator Robert Morris investigated the case and identified Barnes and Jones from the game camera photos and from his personal knowledge of them. Investigator Morris went to the home the day after the alarm call and took photographs. He photographed several boxes containing artificial flowers, lamps, and other household items that had been placed near the door and organized in smaller bags and boxes.

2

¶6. Investigator Morris conducted an interview with Barnes, who waived her *Miranda*[1] rights. Barnes told Investigator Morris she was looking for places for Jones to rent or buy. Barnes said she and Jones came upon the house and saw that it was unoccupied. She said the door was open, so she entered into a side or storage room of the house. However, Barnes said that an alarm went off that scared her, and she and Jones left. Barnes admitted that they returned a few minutes later to see what was in the house. Barnes told Investigator Morris that there was plenty of "amazing stuff" in there and that she began to collect and box the items in order to buy them from the home's owner.

¶7. Barnes was indicted for non-residential burglary under Mississippi Code Annotated section 97-17-33 (Rev. 2014). At trial, Investigator Morris testified about his investigation and interview with Barnes. Investigator Morris also interviewed Jones, who had been indicted with Barnes but was unable to be located for trial. Investigator Morris testified about statements Jones had made during the interview. He testified that Jones said, "[T]hey had collected a bunch of items within the house and gathered them up there at the back patio area." Counsel for Barnes did not object and later cross-examined Investigator Morris on these statements. Investigator Jones testified on cross that Jones' interview was substantially similar to Barnes' interview.

¶8. Barnes testified in her own defense. She testified that she had learned about a house in the area that was vacant and for rent. She testified that they arrived at Moffett's house and mistakenly believed it was the one for rent. She testified that they parked the car closer to

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the road, so it did not look like they were trying to "load anything" into it. Barnes testified that she was in the backyard when Jones informed her the back door was open. Barnes admitted to leaving after the alarm sounded, but she returned to "put some stuff to the side" under the belief that the house would be cleaned out soon. Barnes told the jury that she did not intend to steal anything and that she had never stolen anything before.

¶9. On cross, Barnes testified that she had been in a serious wreck that caused her to suffer injuries. Barnes had received a settlement from the accident and was still taking medication as of the trial. Barnes admitted that she and Jones did not talk to any realtors about renting a house. Barnes testified that she heard about the vacant rental house from her fiancé. The State's counsel asked why Barnes said during her interview with Investigator Morris that the door was open and not that Jones had opened the door. Barnes replied that she misspoke during the interview. The State's counsel asked why Barnes did not look at other parts of the house while she was there to look for a potential rental for Jones and her kids. Barnes replied that the interior door leading to the rest of the home was locked. When asked how she knew the interior door was locked, Barnes said she did not remember how she knew that.

¶10. After both parties rested, the jury instruction conference began.[2] Barnes requested that the jury be instructed on the lesser included crime of trespass. The State objected, arguing that the evidence did not support that instruction, and the circuit court agreed, denying the instruction. The jury deliberated and found Barnes guilty of non-residential burglary. After

---

[2] Barnes moved for a directed verdict after the State rested its case, which the court denied. Barnes did not reassert her motion after she rested her case.

4

a brief sentencing hearing where Barnes argued that she had no criminal history, the circuit court sentenced Barnes to serve seven years in the custody of the Mississippi Department of Corrections, with court costs of $461.50 and a fine of $2,500. Barnes filed a motion for judgment notwithstanding the verdict or a new trial, which was denied. She then appealed.

## STANDARD OF REVIEW

¶11. Rulings on jury instructions are reviewed under an abuse of discretion standard. *Roby v. State*, 183 So. 3d 857, 872 (¶63) (Miss. 2016). However, here, "whether a defendant is entitled to a lesser-included offense instruction [is a] question[] of law that this Court reviews de novo." *Johnsey v. State*, 296 So. 3d 93, 95 (¶8) (Miss. Ct. App. 2019) (citing *Downs v. State*, 962 So. 2d 1255, 1258 (¶10) (Miss. 2007)). "We review a trial court's evidentiary rulings using an abuse-of-discretion standard." *Trest v. State*, 377 So. 3d 981, 986 (¶15) (Miss. Ct. App. 2023). "This Court will not reverse a trial judge's decision on the admissibility of testimony offered at trial unless prejudice amounting to reversible error resulted from such a decision." *Id.*

## DISCUSSION

¶12. Barnes claims that the circuit court erred by (1) refusing to give her proposed jury instruction on the lesser-included offense of trespass and (2) allowing hearsay testimony of a co-indictee despite no objection from Barnes' counsel. Alternatively, Barnes claims that her trial counsel failed to provide effective assistance by failing to object to the hearsay statement.

**(I)     Jury Instruction**

5

¶13.    During the jury instruction conference, Barnes requested the jury be instructed on the crime of trespass—a lesser-included offense of burglary.[3]  After argument, the circuit court denied Barnes' request for the instruction.  Barnes claims this was error by the court because she should have been able to present her theory of the case to the jury.  The State responds that the trespass instruction was not supported by the evidence.

¶14.    "A party is entitled to a lesser-included-offense instruction only if there is 'an evidentiary basis in the record' to support it."  *Croom v. State*, 374 So. 3d 609, 612 (¶10) (Miss. Ct. App. 2023) (quoting *Batiste v. State*, 121 So. 3d 808, 844 (¶69) (Miss. 2013)).  On the issue of lesser-included-offense instructions, our Court in *Croom* quoted *Eldridge v. State*, 232 So. 3d 767, 769-70 (¶9) (Miss. Ct. App. 2017), stating:

> "[A] defendant is entitled to have every legal defense he asserts to be submitted as factual issue for determination by the jury under proper instruction of the court."  *Love v. State*, 121 So. 3d 952, 955 (¶13) (Miss. Ct. App. 2013).  "However, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence."  *Newell v. State*, 49 So. 3d 66, 73-74 (¶¶20-21) (Miss. 2010) (citation omitted).  "A lesser-included-offense instruction should be granted unless the trial court, and ultimately the appellate court, can say" that "[t]aking the evidence in the light most favorable to the accused, and considering all reasonable inferences which may be drawn in favor of the accused from the evidence, no reasonable jury could find the defendant guilty of the lesser included offense and conversely not guilty of at least one essential element of the principal offense."  *Pierce* [*v. State*], 107 So. 3d [1011,] 1014 (¶11) [(Miss. Ct. App. 2012)] (citations and quotation marks omitted).

*Croom*, 374 So. 3d at 612-13 (¶10).  Barnes' proposed jury instruction began by making the jury's consideration of trespass conditional on the jury first finding Barnes not guilty as

---

[3]  *See Fontenot v. State*, 287 So. 3d 322, 328 (¶23) (Miss. Ct. App. 2019).

6

charged for burglary. Her proposed instruction also stated in part, "If you find from the evidence beyond a reasonable doubt that . . . Barnes did willfully or maliciously enter the . . . property . . . then find her guilty of trespass." Under Mississippi Code Annotated section 97-17-87(1) (Rev. 2014) a person commits one type of criminal trespass if she commits "a willful or malicious trespass upon the real or personal property of another . . . ." Barnes' proposed instruction went further, adding, "If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of [t]respassing."

¶15. The facts of this case are similar to *Wilson v. State*, 639 So. 2d 1326 (Miss. 1994). In *Wilson*, the defendant was charged with "business burglary," which included breaking and entering of buildings other than a dwelling, for stealing an amplifier. *Id.* at 1327. At trial, the defendant claimed that he had permission to be on the property and to take the amplifier. *Id.* at 1328. On appeal, the defendant argued the jury should have been given an instruction on trespassing because the defendant maintained he was not guilty of burglary, and he "may have been trespassing." *Id.* However, the supreme court affirmed the defendant's conviction, finding that no evidence supported the trespass instruction and that the defendant's theory of defense was that "he was not guilty of any crime at all," and there was no evidence of a "middle ground." *Id.* at 1329.

¶16. Here, as in *Wilson*, Barnes claims that she thought she was on the correct property and that she had no intent to steal anything. Both Barnes' testimony at trial and in her interview with police were consistent on that point. In addition, there was no evidence of a "middle

7

ground"; whereas, substantial evidence supported the burglary conviction. Put another way, if the jury believed Barnes' testimony, then the jury could not have reasonably found her guilty of trespass using her proposed instruction and defense at trial. *See Jackson v. State*, 90 So. 3d 597, 606-07 (¶¶35-36) (Miss. 2012). Moreover, the burden to support the giving of a lesser-included offense instruction falls on the defendant. *Croom*, 374 So. 3d at 613-14 (¶11). After the State objected to the inclusion of the trespass instruction, Barnes' counsel's only argument was that Barnes was entitled to the instruction. Because there was no evidentiary basis for the trespass instruction, the circuit court did not err by refusing to give it. *Id.* at 615 (¶¶15-16); *see also Jackson*, 90 So. 3d at 607 (¶41).

¶17. Even if the circuit court erred by refusing the instruction, like in *Croom*, the error was harmless. Here, the proposed trespass instruction stated, in part, "If you find that the State has failed to prove any one of the essential elements of the crime of Burglary of an Unoccupied Dwelling, you may proceed with your deliberations to decide whether the State has proven, beyond a reasonable doubt, all of the elements of the lesser crime of Trespassing." In *Croom*, the jury instruction also started by instructing the jury, "If you find that the State has failed to prove any one or more of the essential elements of residential burglary in Count I of this indictment . . . ." *Croom*, 374 So. 3d at 615 (¶15). The defendant in *Croom* was found guilty of all the elements of burglary of a dwelling, and this Court found that the result would have been the same had the error not existed because the jury was instructed to consider the trespass charge only if it first found the defendant not guilty of burglary. *Id.* Likewise, the jury here convicted Barnes of "Burglary of an Unoccupied

8

Dwelling;" thus, the result would have been the same even if the trespass instruction that Barnes proposed had been given. The instruction would have required the jury to first find Barnes *not guilty* of burglary to even consider the lesser-included offense of trespass—which the jury did not do. *Id.*

### (II) Hearsay Testimony

¶18. Barnes claims the trial court erred by allowing hearsay testimony that violated her Sixth and Fourteenth Amendment rights to confrontation despite making no objection at trial. Investigator Morris testified that Jones said, "They had collected a bunch of items within the house and gathered them up there at the back patio area." Neither party disputes that the statement was testimonial hearsay, and neither disputes that there was no objection. Because Barnes did not object to the hearsay statement during trial and did not make a Confrontation Clause objection, she waived the argument on appeal. *Thompson v. State*, 33 So. 3d 542, 547 (¶15) (Miss. Ct. App. 2010); *Morment v. State*, 315 So. 3d 475, 482 (¶31) (Miss. Ct. App. 2020). Therefore, Barnes must rely on the "plain-error" review, which we provide. *Thompson*, 33 So. 3d at 547 (¶16). "To determine if plain error has occurred, this Court must determine 'if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial.'" *Id.* (quoting *McGee v. State*, 953 So. 2d 211, 215 (¶8) (Miss. 2007)).

¶19. We find that the circuit court did not commit plain error. The statement likely had no impact on the outcome of the trial. The statement offered no new information and was substantially similar to Barnes' own testimony. Furthermore, Barnes' own counsel elicited

9

more testimony on the statement from the cross-examination of Investigator Morris. Barnes is barred from complaining about any testimony elicited from her own counsel on cross. *Shaheed v. State*, 205 So. 3d 1105, 1111-12 (¶20) (Miss. Ct. App. 2016). Therefore, there is no plain error.

¶20. Barnes alternatively claims that her trial counsel failed to provide effective assistance by failing to object to Jones' statement. "Under *Strickland*,[4] which this Court must follow, the defendant bears the burden of proof that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Glenn v. State*, 996 So. 2d 148, 156 (¶34) (Miss. Ct. App. 2008) (citing *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990)). Barnes' ineffective assistance claim fails to meet that burden, and since the record here "affirmatively shows that the claims are without merit," we resolve this claim on direct appeal. *See Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020). Barnes' only argument on appeal is a single citation to state that failure to object to issues may undermine the judicial process. *See Walker v. State*, 863 So. 2d 1, 12 (¶20) (Miss. 2004). Barnes has not shown how her trial counsel's failure to object has prejudiced her case. As stated above, the statement offered no new information that Barnes herself had not already testified to. Barnes' ineffective assistance claim is without merit.

## CONCLUSION

¶21. The circuit court did not err by refusing to give Barnes' proposed lesser-included offense instruction on trespass. Further, the court did not commit plain error by allowing

---

4 *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

10

Investigator Morris to testify to Jones' statement without an objection.  Therefore, we affirm

Barnes' conviction and sentence.

¶22.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.  WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**